# WILLIAM MALDONADO ET AL. *v.*
# KELLY C. FLANNERY ET AL.
## (SC 20522)

Robinson, C. J., and McDonald, D'Auria, Kahn and Ecker, Js.

*Syllabus*

The plaintiffs, M and H, sought to recover damages for personal injuries
they sustained when a vehicle driven by the defendant F and owned by
the defendant T rear-ended the vehicle in which the plaintiffs were
traveling. The defendants admitted that the accident resulted from F's
negligence, and the trial was therefore limited to the issues of causation
and damages. The plaintiffs introduced into evidence their medical
records and bills, including reports by their chiropractor, P, in which
P diagnosed M and H with, inter alia, various injuries to and conditions

Maldonado *v.* Flannery

associated with their necks and backs that, in his opinion, were permanent in nature and would require future treatment. After the accident, M was treated approximately sixty-two times over the course of two years and H was treated approximately forty-nine times over the course of eight months, primarily at P's practice, and they each received chiropractic manipulation of the spine and neck, application of hot and cold packs, electrical stimulation, and, on one occasion, an epidural steroid injection. M received two magnetic resonance imagining (MRI) scans, H receive one MRI, and they both were referred for physical therapy. The defendants' expert, L, agreed that the plaintiffs sustained injuries to their necks and backs as a result of the accident and that a period of physical therapy and chiropractic treatment was reasonable and necessary, but he disagreed with P that the length of their treatment was reasonable and that future treatment was necessary. The jury returned a verdict in favor of the plaintiffs and awarded them each economic damages but zero noneconomic damages for their pain and suffering. The verdict form indicated that the jury awarded the plaintiffs all of their respective claimed medical expenses for their hospital visits on the day of the accident, as well as their MRIs, X-rays, and physical therapy, but made slight reductions in the expenses claimed for the chiropractic treatment P provided. Thereafter, the trial court granted the plaintiffs' joint motion for additurs and awarded each plaintiff additional money damages for pain and suffering, concluding that the jury verdict awarding economic damages but zero noneconomic damages was inherently inconsistent because the jury necessarily found that the plaintiffs' medical treatment was reasonable and necessary and because the plaintiffs' particular medical treatment inherently involved treatment for pain. Although the plaintiffs accepted the additurs, the defendants filed an appeal in lieu of accepting or rejecting the additurs. The Appellate Court reversed the trial court's judgment, concluding that the trial court had failed to identity the part of the record that supported its conclusion that the jury's failure to award noneconomic damages was unreasonable, and also concluding that the jury's verdict was not inconsistent because the jury reasonably could have concluded that the plaintiffs had incurred reasonable and necessary medical expenses but zero noneconomic damages for pain and suffering in light of the conflicting and inconsistent evidence adduced at trial. On the granting of certification, the plaintiffs appealed to this court. *Held*:

1. Contrary to the Appellate Court's conclusion, the trial court properly set forth in its memorandum of decision, in accordance with this court's case law, the evidentiary and logical basis for its decision to grant the plaintiffs' joint motion for additurs, and that explanation was sufficiently specific to allow appellate review for an abuse of discretion: in its memorandum of decision, the trial court observed its obligation to view the evidence in the light most favorable to sustaining the jury's verdict, described the specific nature of the medical expenses incurred by the

Maldonado *v.* Flannery

plaintiffs, including the treatment each plaintiff received, and noted the agreement of the parties' respective experts that each plaintiff had sustained sprains or strains to his neck and back as a result of the accident; moreover, the trial court concluded that, because the jury explicitly awarded damages based on the plaintiffs' claimed medical costs, it must have credited those records and found the treatments to be necessary and reasonable, and that, because those specific treatments inherently signified a level of physical pain suffered by the plaintiffs, it was illogical and inconsistent not to award noneconomic damages, especially when the jury awarded the exact amount of the vast majority of the plaintiffs' claimed expenses; accordingly, on the basis of that articulation, a reviewing court was able to identify the evidence and jury findings that the trial court believed, in the exercise of its discretion, warranted the relief granted, to assess the court's reasoning for logical or legal flaws, and to determine whether the court had abused its discretion by ordering additurs.

2. The Appellate Court incorrectly concluded that the trial court had abused its discretion by granting the plaintiffs' joint motion for additurs, and, because the defendants effectively declined to accept the additurs, the case was remanded for a new trial with respect to the issues of causation and damages: the jury necessarily credited the plaintiffs' medical bills and/or the testimony of L regarding the injuries sustained by the plaintiffs as a result of the accident and the reasonableness of the treatment they received, and the trial court reasonably concluded that the inherent purpose of the medical treatment credited by the jury, including the chiropractic manipulations, the application of hot and cold packs, and the epidural steroid injections, was to treat pain and suffering and was not merely diagnostic or prophylactic in nature, which may not involve pain; moreover, because the trial court could have reasonably concluded that the jury's verdict was inconsistent insofar as the jury found, on the one hand, that the plaintiffs suffered personal injuries in the accident that necessitated such medical treatment but, on the other hand, that the plaintiffs experienced no pain or suffering as a result of the accident that warranted an award of noneconomic damages, the court's decision to grant the plaintiffs' joint motion for additurs was not an abuse of discretion.

(*One justice dissenting*)

Argued April 26, 2021—officially released May 3, 2022

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the named defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Budzik, J.*; verdict for the plaintiffs;

343 Conn. 150 MAY, 2022 153

Maldonado *v.* Flannery

thereafter, the court granted the plaintiffs' motion for
additurs and rendered judgment for the plaintiffs, from
which the defendants appealed to the Appellate Court,
*Keller*, *Bright* and *Bear*, *Js.*, which reversed the trial
court's judgment and remanded the case to that court
with direction to deny the motion for additurs and to
render judgment in accordance with the jury's verdict,
from which the plaintiffs, on the granting of certifica-
tion, appealed. *Reversed*; *new trial.*

*Philip F. von Kuhn*, for the appellants (plaintiffs).

*Jack G. Steigelfest*, for the appellees (defendants).

*Opinion*

ECKER, J. This case presents the scenario, not alto-
gether uncommon, in which a jury awards personal injury
plaintiffs economic damages for medical expenses but
zero noneconomic damages. The trial court granted the
joint motion for additurs filed by the plaintiffs, William
Maldonado and Geovanni Hernandez, and awarded
each plaintiff additional money damages for pain and
suffering. The Appellate Court reversed the judgment
of the trial court on the grounds that it had failed to
articulate the specific facts to justify the additur awards
or to construe the conflicting evidence in the light most
favorable to sustaining the jury's verdict. See *Maldo-
nado* v. *Flannery*, 200 Conn. App. 1, 9, 13, 238 A.3d 127
(2020). We reverse the judgment of the Appellate Court.

I

FACTS AND PROCEDURAL HISTORY

On June 6, 2016, at approximately 3:20 p.m., the plain-
tiffs were traveling in a 2004 Ford Econoline van on
Route 4 in Farmington when they were rear-ended by
the named defendant, Kelly C. Flannery, who was driv-

Maldonado *v.* Flannery

ing a Ford Taurus owned by her father.[1] The collision caused serious damage to the defendants' vehicle, but the plaintiffs' van sustained only minimal visible damage.

The plaintiffs declined medical attention at the scene of the accident. A few hours later, they both sought medical treatment at the Hospital of Central Connecticut, complaining of body aches and pain in their lower backs and necks. At the hospital, both plaintiffs underwent diagnostic testing. Maldonado was diagnosed with a neck strain, a lower back strain, and a contusion on his sternum. Hernandez was diagnosed with back pain and a neck spasm. The plaintiffs each were prescribed anti-inflammatory and pain medications and were released from the hospital later that evening.

Soon after the accident, the plaintiffs sought additional medical treatment from Brian Pollack, a chiropractor at New Britain Injury & Spine. Pollack treated Maldonado approximately sixty-two times intermittently over the course of the next two years and referred him for two magnetic resonance imaging (MRI) scans. Maldonado's treatment included application of hot and cold packs, electrical stimulation, and mechanical traction. Hernandez underwent similar treatment with Pollack, approximately forty-nine times over the course of eight months, and was referred for one MRI scan. Pollack also referred both plaintiffs for six months of physical therapy, which they received from another provider. Despite this course of treatment, the plaintiffs continued to experience pain. Subsequently, an epidural steroid injection in the lower back was administered to each plaintiff at Jefferson Radiology.

On July 18, 2017, the plaintiffs filed a negligence action against the defendants in the Superior Court. The

---

[1] Kelly C. Flannery's father, Michael T. Flannery, is also a defendant in this case. We refer to Kelly C. Flannery and Michael T. Flannery collectively as the defendants and to Kelly C. Flannery individually as Flannery.

Maldonado *v.* Flannery

case was tried before a jury. The issues at trial were limited to causation and damages because the defendants admitted that the collision resulted from Flannery's negligence. At trial, both Maldonado and Hernandez testified that the collision caused the injuries and pain for which they received the medical treatment previously described.[2] Maldonado testified that he remained unable to do heavy lifting at work and faced difficulties carrying out other tasks he previously was able to perform. He claimed medical expenses in the amount of $18,953.38.[3] Hernandez testified that he had difficulty standing up and difficulty sleeping due to pain caused by the accident. He claimed medical expenses in the amount of $13,254.94.

To corroborate their testimony, the plaintiffs introduced medical records and bills from their health care providers. The plaintiffs also presented lengthy reports authored by Pollack, opining, among other things, that their respective injuries were causally related to the accident, requiring the medical treatment and supervision he provided. Pollack's report diagnosed Maldonado, in relevant part, with a disc herniation, radiculitis, nonallopathic segmental dysfunction, muscle spasms in the cervical and lumbar spine, pain in the lumbar and thoracic spine, and a sprain of the left shoulder. Pollack diagnosed Hernandez with nonallopathic seg-

[2] The plaintiffs' claim for economic damages included emergency care at the Hospital of Central Connecticut the day of the accident, as well as the subsequent MRI scans, chiropractic treatment, physical therapy, epidural steroid injections, and Maldonado's X-rays.

[3] Maldonado also testified that he had been involved in a prior motor vehicle accident in 2014, after which he received chiropractic treatment for approximately two months. The medical records from Maldonado's previous treatment were admitted into evidence at trial. Those records indicate that the prior accident occurred on April 6, 2014. Maldonado received chiropractic treatment for lower back pain from Dr. Michael Yoel beginning on April 15, 2014, and ending on June 5, 2014. Yoel's final treatment note provides in relevant part that Maldonado was "feeling better and seems to be doing okay" and that "no further therapy is felt to be necessary."

Maldonado *v.* Flannery

mental dysfunction, pain and muscle spasms in the cervical, thoracic and lumbar spine, and an "[e]xtrusion type" herniation of the lumbar spine. He also assigned each plaintiff a permanent impairment rating as a result of the accident.[4] Pollack further opined that the plaintiffs' injuries were permanent in nature and rendered each of them highly susceptible to future aggravations and exacerbations, which would require future chiropractic treatment at least twice a month at a cost of $150 per visit, and future medical supervision at a frequency of three times per year and a cost of $250 per evaluation.

The defendants challenged the plaintiffs' claims on multiple fronts. They attacked the credibility of the plaintiffs' testimony[5] and medical evidence by adducing conflicting evidence as to the dates of treatment, the extent to which Maldonado's reported injuries were directly caused by the 2016 accident, as opposed to a prior accident in 2014; see footnote 3 of this opinion; and the duration of the plaintiffs' chiropractic treatment. In addition, the defendants observed that the emergency room records from Maldonado's visit on the day of the accident indicate that Maldonado's last visit to the

---

[4] Pollack assigned a 7 percent impairment rating to Maldonado and 5 percent impairment rating to Hernandez.

[5] During cross-examination, the defendants' counsel attacked Maldonado's credibility in connection with numerous aspects of his testimony. For example, Maldonado first denied going to the hospital after his prior 2014 accident. On cross-examination, however, the defendants' counsel introduced hospital records showing that Maldonado had visited the hospital after the 2014 accident. Maldonado then altered his testimony and said that he could not remember if he had visited the hospital in 2014. Describing the 2016 accident, Maldonado initially testified that, while he was approaching a red light in his vehicle, he saw the defendants' car approaching quickly from behind and did not have time to move out of the way. However, during cross-examination, Maldonado testified that he looked back and tried to avoid the approaching vehicle. As for Hernandez, the defendants' counsel elicited admissions that he has a history of drug use, several felony convictions, and memory problems. The defendants' counsel argued to the jury that Hernandez' memory problems undermined the accuracy of his testimony.

Maldonado *v.* Flannery

hospital was on July 16, 2015, "for chronic pain/sciatica . . . ."

The defendants also presented the jury with expert testimony from an orthopedic surgeon, Jonas V. Lieponis, who disputed the etiology and permanency of some of the plaintiffs' injuries, testifying that the plaintiffs' medical records demonstrated that they both suffered from preexisting degenerative disc disease prior to the accident. Nonetheless, Lieponis agreed that both of the plaintiffs sustained injuries to their necks and lumbar regions as a result of the accident and that a certain period of physical therapy and/or chiropractic treatment was reasonable and necessary to treat those injuries. Lieponis disagreed, however, that the length of treatment was reasonable or that future treatment was necessary. Specifically, in Lieponis' expert opinion, the evidence was insufficient to conclude that the plaintiffs had suffered permanent impairments as a result of the accident. Lieponis did not provide any testimony regarding the pain suffered by the plaintiffs as a consequence of their injuries but, in response to a question posed by the plaintiffs' counsel, did state that each plaintiff underwent an epidural steroid injection to treat his injury, which, "like any injection, [entails] an element of pain."

The jury returned a verdict in favor of the plaintiffs and awarded economic damages in the amount of $17,228.38 to Maldonado and $11,864.94 to Hernandez. The award consisted of full payment for all expenses related to the plaintiffs' hospital visits, radiologic/MRI services, physical therapy, and epidural steroid injections. The only reduction made by the jury was for chiropractic care; Maldonado was awarded $7035, which was $1725 less than the total amount billed by Pollack, and Hernandez was awarded $5670, which was $1390 less than the total amount billed by Pollack. The jury also awarded Maldonado $1800 in future economic

Maldonado *v.* Flannery

damages. It did not award any future economic damages to Hernandez. The jury did not award either plaintiff any noneconomic damages for pain and suffering, past or future.

The plaintiffs timely filed a joint motion to set aside the verdicts and for a new trial. They also filed a contemporaneous joint motion for additurs pursuant to General Statutes §§ 52-216a and 52-228b. The defendants timely objected. The trial court issued a written memorandum of decision granting the plaintiffs' motion for additurs and to set aside the verdicts. The trial court concluded that the jury verdict awarding economic damages to each plaintiff but zero noneconomic damages was inherently inconsistent because "the jury necessarily found that the plaintiffs' medical treatment was reasonable and necessary and because the plaintiffs' particular medical treatment inherently involved treatment for pain . . . ." The trial court recognized that "the jury could have reasonably concluded that [the plaintiffs] were [not] credible witnesses" but pointed out that "the jury must have credited and relied on some evidence" because it "explicitly awarded damages based on the plaintiffs' medical costs . . . ." Indeed, the jury's award of economic damages reflected an "exactitude" demonstrating that it necessarily "concluded that the treatments set forth in [the plaintiffs' medical] bills were necessary and reasonable and that the injuries being treated during those visits were proximately caused by the defendant's negligence." The trial court reasoned that the nature of the medical treatment deemed reasonable and necessary by the jury for injuries caused by the defendant's negligence and the "underlying symptoms" requiring that treatment "bespeak a level of physical pain suffered by [the plaintiffs]." Accordingly, the trial court awarded past noneconomic damages in the amount of $8000 to Maldonado and $6500 to Hernandez. The trial court explained that these amounts were "based

on the amounts of past economic damages awarded by
the jury for medical costs inherently involving treatment
for pain, more specifically, the medical bills from New
Britain Injury & Spine [for chiropractic treatment] and
Jefferson Radiology [for epidural steroid injections
that] the jury necessarily credited in its verdict.''[6] The
court's order concluded: ''The parties shall have twenty
days from the date of this decision to file their written
acceptance or rejection of the additur with the clerk's
office. If the additur is accepted, judgment will enter
for the plaintiffs in the amount of $27,028.38 ($19,028.38
+ $8000) for . . . Maldonado and $18,364.94
($11,864.94 + $6500) for . . . Hernandez. If the additur
is not timely accepted by both parties, a new trial is
ordered.''

The plaintiffs accepted the additurs within the pre-
scribed time period, but the defendants filed an appeal
''in lieu of an acceptance or rejection of the [additurs].''[7]
See General Statutes § 52-228a (''the party aggrieved by
the order of . . . additur may appeal as in any civil
action''). The Appellate Court reversed the trial court's
judgment, concluding that the trial court had failed ''to
identify the part of the record that supported its conclu-
sion that the jury's failure to award noneconomic dam-
ages was unreasonable . . . .'' *Maldonado* v. *Flannery*,
supra, 200 Conn. App. 9. The Appellate Court further
determined that the verdict was not inconsistent because

---

[6] The jury awarded Maldonado medical costs in the amount of $7035 for
the treatment at New Britain Injury & Spine and $943 for the treatment at
Jefferson Radiology, for a total award of $7978 in connection with these two
treatment providers. The jury awarded Hernandez $5670 for the treatment
at New Britain Injury & Spine and $937 for the treatment at Jefferson
Radiology, for a total award of $6607 in connection with these two treat-
ment providers.

[7] The defendants neither accepted nor expressly rejected the additur. We
construe the defendants' failure to accept the additur as the equivalent of
a rejection. See, e.g., *Snell* v. *Beamon*, 82 Conn. App. 141, 144, 842 A.2d
1167 (2004) (failure to accept additur within time allotted by trial court
resulted in new trial limited to issue of damages).

Maldonado *v.* Flannery

the jury reasonably could have concluded that the plaintiffs incurred reasonable and necessary medical expenses, but zero noneconomic damages for pain and suffering, in light of the conflicting and inconsistent evidence adduced at trial. See id., 10, 13. This certified appeal followed.[8]

II

LEGAL PRINCIPLES GOVERNING MOTIONS
TO SET ASIDE JURY VERDICTS AS
INADEQUATE OR EXCESSIVE

A

Legal Principles Governing the Trial Court's Review

There is an inherent tension in the legal principles governing our resolution of this case because the operative considerations demand great deference to two different decision makers: the trial judge and the jury. The judge and the jury each serve essential and elemental functions in our civil justice system and must be accorded wide discretion in the discharge of their respective duties. For the most part, judges and juries occupy separate but coordinate spheres and work cooperatively to produce a harmonious outcome integrating the facts found by the jury and the legal rules set forth by the judge. However, these fields of operation are not entirely separate and distinct, and there occasionally is conflict between the two decision makers—as when a trial court sets aside a jury's verdict. Such moments of conflict have always been present in Connecticut and, indeed, in the English common law going back at least to the mid-seventeenth century. See *Bartholomew* v. *Clark*, 1 Conn. 472, 480 (1816) ("To all courts acting on the

_____

[8] We granted the plaintiffs' petition for certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the trial court had abused its discretion in ordering additurs in favor of both of the plaintiffs?" *Maldonado* v. *Flannery*, 335 Conn. 967, 240 A.3d 284 (2020).

Maldonado *v.* Flannery

principles of the common law, the power is incidental
to grant new trials for various causes, among which
one is, that the verdict was against evidence. This has
ever been done in England, as well as in sundry states
in the union. Courts in this state, then, acting according
to the common law, have this power unless prohibited
by positive law.'' (Emphasis omitted.)).

A reviewing court confronted with an appeal chal-
lenging a trial court's decision on a motion to set aside
a jury's verdict therefore must navigate a path between
two different cardinal principles. The first is that the
right to a jury trial is enshrined in our constitution and
counts among the most vital checks against governmen-
tal overreach. See Conn. Const., art. I, § 19 (''[t]he right
of trial by jury shall remain inviolate''); see also *Seals*
v. *Hickey*, 186 Conn. 337, 350, 441 A.2d 604 (1982) (''[l]it-
igants have a constitutional right to have questions of
fact decided by a jury''). The second, firmly embedded
in the common law as a constitutive aspect of the jury
right, is the essential role that the trial judge plays in
dispensing justice and, of particular relevance here,
the fact that the trial judge does not become a mere
spectator once the jury returns its verdict. To the con-
trary, the trial court has not only the power but the
''duty to set aside the verdict when it finds that it does
manifest injustice, and is . . . palpably against the evi-
dence.'' (Internal quotation marks omitted.) *Fazio* v.
*Brown*, 209 Conn. 450, 454, 551 A.2d 1227 (1988); see
*Roma* v. *Thames River Specialties Co.*, 90 Conn. 18,
19, 96 A. 169 (1915) (''[i]t was the [trial] court's duty to
set aside the verdict if its manifest injustice was so
plain and palpable as to justify the suspicion that the
jury or some of its members were influenced by preju-
dice, corruption or partiality''). See generally *Saleh* v.
*Ribeiro Trucking, LLC*, 303 Conn. 276, 280, 32 A.3d
318 (2011) (''[o]ur review of the trial court's grant of
remittitur [or additur] is dictated by, on the one hand,

162 MAY, 2022 343 Conn. 150

Maldonado *v.* Flannery

the high bar that must be met before a trial judge may set aside a jury verdict, and, on the other hand, the necessarily broad authority that the trial judge has to oversee the trial process''); *Turner* v. *Pascarelli*, 88 Conn. App. 720, 722–23, 871 A.2d 1044 (2005) (''[There are] two competing jurisprudential principles that additurs bring into play. On the one hand, deference to the ruling of the trial court is warranted because that court, having observed the trial proceedings in their entirety, is in a better position than an appellate court to assess the credibility of the witnesses and the appropriate weight to be accorded their testimony. . . . On the other hand, deference is problematic because the trial court's exercise of its discretion impairs the litigants' constitutional right to designate a jury, rather than a court, to be the fact finder in their case.'' (Citation omitted.)).

This doctrinal tension does not signal an underlying weakness in the applicable legal framework or a fatal flaw in the principles that, at times, seem to vie for preeminence in the analysis. Rather, it is a sign of health and vigor reflecting a properly functioning arrangement of checks and balances within our civil justice system. Former Chief Justice Zephaniah Swift described the arrangement and extolled its virtues in the seminal case of *Bartholomew* v. *Clark*, supra, 1 Conn. 472: ''I think a discreet and prudent exercise of th[e] power [to set aside a verdict] can be attended with no inconvenience or danger; that it is necessary to adopt it to complete the fabric of jurisprudence, and to give to courts all the powers essential to a due execution of the law. It should be exercised only in clear cases, which will rarely occur. It will leave to juries an important and valuable power in the trial of civil causes; and when it is understood that an erroneous verdict can be corrected, the public confidence in the trial by jury will be increased, instead of being impaired.'' Id., 482; see *Howe* v. *Raymond*, 74

Maldonado *v.* Flannery

Conn. 68, 71–72, 49 A. 854 (1901) ("[The] power of
supervision and correction [that] the judge has over the
verdict is an essential part of the jury system. . . . Trial
by jury, in the primary and usual sense of the term at
the common law and in the American constitutions, is
not merely a trial by a jury of twelve men before an
officer vested with authority to cause them to be sum-
moned and empanelled, to administer oaths to them
and to the constable in charge, and to enter judgment
and issue execution on their verdict; but it is a trial by
a jury of twelve men, in the presence and under the
superintendence of a judge empowered to instruct them
on the law and to advise them on the facts, and (except
on acquittal of a criminal charge) to set aside their
verdict, if in his opinion it is against the law or the
evidence." (Internal quotation marks omitted.)).

Of the great many cases over the past two hundred
years involving appeals from trial court decisions grant-
ing or denying a motion to set aside a jury's verdict, a
large number involve claims of excessive or inadequate
damage awards, and, within that category, many involve
challenges directed at the jury's failure to award non-
economic damages, as in the present case.[9] At the most

_____

[9] In addition to our case law on the subject, the legislature has enacted
various statutes over the years, beginning during the colonial era, regarding
the judicial power to set aside a jury verdict in a civil case. See *Bissell* v.
*Dickerson*, 64 Conn. 61, 64–69, 29 A. 226 (1894) (providing detailed discussion
of various statutes enacted between 1644 and 1893 that conferred statutory
authority to certain courts—including, for brief period of time, to Supreme
Court—to rule on motions to set aside jury verdicts as against weight of
evidence). More recently, the legislature has enacted a number of statutes
specifically relating to the procedure (and, in some cases, the standards)
for setting aside a jury's award of damages as excessive or inadequate. See
General Statutes §§ 52-216a, 52-228, 52-228a, 52-228b and 52-228c.

Section 52-228b, which is directly applicable to the present case, provides
that "[n]o verdict in any civil action involving a claim for money damages
may be set aside except on written motion by a party to the action, stating
the reasons relied upon in its support, filed and heard after notice to the
adverse party according to the rules of the court. No such verdict may be
set aside solely on the ground that the damages are excessive unless the
prevailing party has been given an opportunity to have the amount of the

Maldonado *v.* Flannery

general level, the fundamental question for a trial court deciding whether to set aside a jury verdict on the basis of an excessive or inadequate damages award is very simple: In light of the evidence presented at trial, is the jury's verdict unreasonable? See, e.g., *Munn* v. *Hotchkiss School*, 326 Conn. 540, 575, 165 A.3d 1167 (2017) (repeating oft cited principle that one immovable limitation on power of trial court to set aside jury's verdict is parties' constitutional right to have jury determine amount of damages "when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded" (internal quotation marks omitted)); *Burns* v. *Metropolitan Distributors*, 130 Conn. 226, 229, 33 A.2d 131 (1943) (concluding that trial court improperly set aside jury's verdict because "[t]he jury might reasonably have arrived at the verdict [it] did"). Reasonableness is the lodestar: if the jury's verdict and award of damages are reasonable, then they "should stand; if [they are] not, [they] should be set aside." *Steinert* v. *Whitcomb*, 84 Conn. 262, 264, 79 A. 675 (1911).

Our cases have articulated the following principles to guide the trial court's reasonableness inquiry and to assist it in deciding a motion to set aside a damages award as excessive or inadequate. It is axiomatic that the trial court must conduct its own independent assessment of the full evidentiary record to determine whether the jury reasonably could have reached its verdict on

judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable." Because this statute merely codifies the common law, it provides no useful substantive guidance regarding the proper legal standard for determining when a jury's award of damages is inadequate or an additur is appropriate. Cf. *Wichers* v. *Hatch*, 252 Conn. 174, 187, 745 A.2d 789 (2000) (noting that § 52-216a is codification of common-law standard governing motions to set aside verdict as excessive or inadequate).

Maldonado *v.* Flannery

the basis of the facts and reasonable inferences drawn therefrom. As we have explained, "[i]n passing [on] a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives [that] influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or [was] governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial." (Internal quotation marks omitted.) *Birgel* v. *Heintz*, 163 Conn. 23, 27, 301 A.2d 249 (1972); accord *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 329–30, 789 A.2d 459 (2002); *Wichers* v. *Hatch*, 252 Conn. 174, 186–87, 745 A.2d 789 (2000).

In independently reviewing the evidence adduced at trial, the trial court must view the evidence through the same lens and against the same background of human experience as would a juror, but the trial court is not a juror and may not substitute its own judgment for that of the jury. See *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 283 ("[t]he fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive" (internal quotation marks omitted)); id., 284 (appellate review is necessary to ensure that trial court "did not merely substitute its own judgment for that of the jury"); *Mulcahy* v. *Larson*, 130 Conn. 112, 114–15, 32 A.2d 161 (1943) ("[t]o justify setting aside a verdict

Maldonado *v.* Flannery

as inadequate, something more than a doubt of its adequacy must exist''). Thus, in arriving at its reasonableness determination, the trial court must view the evidence ''in the light most favorable to the prevailing party . . . .'' (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995); see *Saleh* v. *Ribeiro Trucking, LLC*, supra, 290 (''[w]e emphasize that, in reviewing the evidence in the light most favorable to sustaining the verdict, the trial court, and the reviewing court, are bound by the jury's credibility determinations and all *reasonable* inferences the jury could have drawn from the evidence'' (emphasis in original)).

The question for the trial court is not whether the jury exercised poor judgment but, instead, whether the jury's damages award lies outside the range of reasonableness; mere disagreement is not enough to warrant judicial intervention. For this reason, ''[t]he ultimate test [that] must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption.'' (Internal quotation marks omitted.) *Munn* v. *Hotchkiss School*, supra, 326 Conn. 576; see *Earlington* v. *Anastasi*, 293 Conn. 194, 207, 976 A.2d 689 (2009) (asking whether verdict ''so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake'' (internal quotation marks omitted)).[10] This inquiry is not intended to detect the kind

---

[10] Many Connecticut cases, especially those of an earlier vintage, speak in terms of the '' 'manifest injustice of the verdict' '' that would '' 'justify the suspicion' '' that the jury was influenced (or swayed) by improper considerations. *Steinert* v. *Whitcomb*, supra, 84 Conn. 263. These cases characterize the inquiry as follows: ''Our rule governing the action of the trial court over verdicts is perfectly clear. 'It should not set aside a verdict whe[n] it is apparent that there was some evidence [on] which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside [when] the

Maldonado *v.* Flannery

of shock that arises from a moral outrage but, instead, refers to the distress that may be felt when the requirement of reasonableness has been abandoned in a setting in which reason is a necessary element of any legitimate outcome. If the verdict cannot be explained rationally, then the trial court may presume that it is tainted by improper considerations.

Finally, if the trial court concludes that the jury's verdict and award of damages are excessive or inadequate and that the motion to set aside should be granted, the trial court must provide an explanation setting forth the reasons for its decision in sufficient detail to facilitate appellate review. As we have explained, "[i]n order for us to determine whether the trial court properly reviewed the evidence in the light most favorable to sustaining the verdict, and did not merely substitute its own judgment for that of the jury, a trial court ordering a remittitur [or additur] must set forth the evidence, viewed in that light, and explain the specific reasons that led the court to conclude that the award shocked the conscience of the court. We set forth this requirement, not to discourage the trial court from granting remittitur [or additur] in those cases [in which] it is warranted, but rather to aid the reviewing court in its determination of whether the trial court properly exercised its discretion." *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 284. This requirement is not intended to impose an onerous burden on the trial court, and it does not require an excruciatingly detailed explication of the evidence supporting the trial court's ruling. It requires only that the trial court explain its reasoning with reference to the evidence and with sufficient specificity to

---

manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that [either the jury] or some of [the jurors] were influenced by prejudice, corruption, or partiality.' " Id., quoting *Burr* v. *Harty*, 75 Conn. 127, 129, 52 A. 724 (1902). We perceive no significance between these slightly different formulations of the same inquiry.

Maldonado *v.* Flannery

allow an appellate court to review the decision for an abuse of discretion.

B

Legal Principles Governing Appellate Review

We review a decision of the trial court to set aside the jury's verdict and to order an additur for an abuse of discretion. See, e.g., *Ashmore* v. *Hartford Hospital*, 331 Conn. 777, 781–82, 208 A.3d 256 (2019); *Wichers* v. *Hatch*, supra, 252 Conn. 181. A trial court's decision to set aside a verdict and to order an additur "is entitled to great weight and every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) *Mansfield* v. *New Haven*, 174 Conn. 373, 375, 387 A.2d 699 (1978); accord *Ashmore* v. *Hartford Hospital*, supra, 783. The trial court, having observed the trial and evaluated the testimony first-hand, is better positioned than a reviewing court to assess both the aptness of the award and whether the jury may have been motivated by improper sympathy, mistake, partiality, or prejudice. See, e.g., *Childs* v. *Bainer*, supra, 235 Conn. 113; *Palomba* v. *Gray*, 208 Conn. 21, 24–25, 543 A.2d 1331 (1988); *Birgel* v. *Heintz*, supra, 163 Conn. 26–27.

Equally well settled is the principle that the same level of deference is owed whether the trial court grants or denies the motion to set aside the verdict. "The action of a trial judge is no less entitled to weight when he sets aside a verdict, than when he refuses to set it aside; and for the same reasons. He has seen the witnesses, heard their testimony, observed their demeanor on the witness stand, their manner and bearing, their intelligence, character and means of knowledge. And if while all this is fresh in his mind he sets aside a verdict, great weight would naturally be given to his action." *Loomis* v. *Perkins*, 70 Conn. 444, 447, 39 A. 797 (1898); see *Ashmore* v. *Hartford Hospital*, supra, 331 Conn. 781–82

Maldonado *v.* Flannery

(agreeing with plaintiff "that binding precedent estab-
lishes, and our recent cases reaffirm, that a trial court's
decision to grant or deny remittitur is reviewed according
to a deferential abuse of discretion standard"); *Gladu*
v. *Sousa*, 252 Conn. 190, 191, 193, 745 A.2d 798 (2000)
(trial court properly exercised its discretion to grant
plaintiff's motion for additur and, "after the defendant
refused the additur, ordered a new trial on the issue
of damages").

A reviewing court, like the trial court, must remain
cognizant of the constitutional function of the jury in
our system of justice. See part II A of this opinion. At
the same time, our case law involving trial court rulings
on motions to set aside a jury's verdict and award of
damages as excessive or inadequate, which has been
codified by the legislature; see footnote 9 of this opin-
ion; reflects a firm commitment to the belief that we
should give great weight to the trial court's exercise of
discretion regarding the reasonableness of the jury's
verdict. That discretion is not unlimited, and a reviewing
court will occasionally find it has been exceeded, but
our precedent requires that we accord substantial defer-
ence to the decision of a trial court once we are satisfied
that the trial court has rendered its decision in accor-
dance with the applicable legal principles, as articulated
in part II A of this opinion.

III

JURY AWARDS OF ECONOMIC DAMAGES AND ZERO
NONECOMONIC DAMAGES (SPLIT VERDICTS)

The present case requires us to consider how the
foregoing principles apply in one specific context that
has become the subject of increasingly frequent litiga-
tion over the past twenty-five years. Juries in personal
injury cases sometimes award a plaintiff economic dam-
ages for medical expenses caused by the defendant's
negligence but no damages for pain and suffering, loss

170                MAY, 2022                343 Conn. 150

Maldonado *v.* Flannery

of life's enjoyment, or any other type of noneconomic damages.[11] These verdicts, which we will refer to as "split verdicts" in this opinion, occur in a variety of personal injury cases but most often in automobile accident cases in which a plaintiff sustains soft tissue injuries requiring chiropractic treatment and physical therapy but no surgical or orthopedic care. As we discuss herein, the fundamental principles governing trial and appellate review of split verdicts are no different from those discussed in part II of this opinion, but there is one

---

[11] There are scores of unpublished or unofficially reported Connecticut trial court decisions over the past twenty years adjudicating postverdict motions to set aside a jury's verdict as inadequate in split verdict cases. It is reasonable to believe that more such verdicts, perhaps many more, have occurred without being recorded in a published opinion. Whatever the exact number, the situation arises frequently enough that the Superior Court judges have promulgated a specific jury instruction that a trial court may use when a jury returns such a verdict, which provides: "Ladies and [g]entlemen, I have reviewed your verdict and see that you have found in favor of the plaintiff and awarded economic damages, but have awarded zero [noneconomic] damages. [Although] that is a possible verdict, some might argue that it is inconsistent to say that a person was injured enough to incur (medical expenses/lost wages), but experienced no pain and suffering or other [noneconomic] damages. On the other hand, you may have concluded that [although] the plaintiff proved (his/her) economic damages, (he/she) failed to prove the claimed [noneconomic] damages.

"To help eliminate any concerns either party might have, I am going to ask you to go back and review your verdict. In addition to my instructions regarding the plaintiff's burden of proving damages you should also remember my instruction that even momentary pain and suffering [are] compensable.

"Now, in sending you back for further deliberations, I am in no way suggesting that you should change your verdict. I am simply asking you to review your thought processes once more to make sure you have considered all relevant factors. I am giving you a new verdict form, which you should use if you decide to change your verdict." Connecticut Civil Jury Instructions 3-4.9, available at https://www.jud.ct.gov/ji/civil/Civil.pdf (last visited April 26, 2022).

The Committee Notes advise that "[j]udges are not required to give this charge, but they have the discretion to do so pursuant to General Statutes § 52-223." Id. Section § 52-223 provides: "The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration."

Maldonado *v.* Flannery

distinguishing characteristic of these cases that warrants attention because it is typically not seen in other claims of inadequacy or excessiveness.

The essential thrust of a plaintiff's argument in a split verdict case is not primarily that the verdict is contrary to the evidence, but that the verdict is internally inconsistent. A plaintiff claims that the two components of the damages verdict are self-contradictory; the jury's award of substantial economic damages arising from physical injuries, but its failure to award any corresponding noneconomic damages for the pain and suffering associated with those same injuries, cannot logically coexist and, thus, reflect an inherent flaw in the jury's verdict. See *Wichers* v. *Hatch*, supra, 252 Conn. 179 (noting that plaintiff's sole argument in support of additur "was that the verdict was inconsistent in that 'if the jury believed [he] was injured so as to require treatment and incur medical bills, it is inconsistent to find that these same injuries did not cause pain and suffering' "); see also *Brooks* v. *Brattleboro Memorial Hospital*, 958 F.2d 525, 530 (2d Cir. 1992) (finding inherent inconsistency in jury's split verdict in medical malpractice case and citing cases); cf. *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 577, 479 A.2d 781 (1984) ("in civil cases [in which] a verdict rests [on] a factual finding contradictory to another finding of the same issue by the trier the judgment cannot stand").

In fact, until relatively recently, the rule in Connecticut was that a jury's verdict was inconsistent as a matter of law if the jury awarded a plaintiff damages for the reasonable and necessary cost of medical care for physical injuries proximately caused by the defendant's negligence but zero damages for any pain, suffering, or noneconomic impairment arising from those same injuries. In *Johnson* v. *Franklin*, 112 Conn. 228, 152 A. 64 (1930), overruled by *Wichers* v. *Hatch*, 252 Conn. 174, 745 A.2d 780 (2000), we held that a jury award of

Maldonado *v.* Flannery

the economic damages incurred by the plaintiffs in a
motor vehicle accident "with no allowance for the pain
or the physical injuries suffered" was "manifestly inade-
quate" and must be set aside. Id., 229, 232. The *Johnson*
per se rule prevailed for more than fifty years, but doc-
trinal cracks became evident in the 1990s,[12] and, in 2000,
its holding was expressly overruled in *Wichers* v. *Hatch*,
supra, 176, in which we held that an award of economic
damages and zero noneconomic damages is not per se
inadequate as a matter of law.

In *Wichers*, the plaintiff brought an action to recover
for personal injuries sustained in an automobile colli-
sion caused by the defendant driver's negligence. Id.
The plaintiff claimed that he suffered a neck injury
requiring chiropractic treatment as a result of the acci-
dent, but his allegation was complicated by the fact
that he was in treatment for preexisting neck injuries
at the time of the accident. See id., 177. Indeed, by that
time, the plaintiff had been receiving ongoing chiroprac-
tic treatment for seven years "as part of a monthly
maintenance program" for his neck condition. Id. The
plaintiff had a documented history of arthritis in his
neck, spondylosis, and neck injuries incurred in two
prior motor vehicle accidents in the four years before
the collision. Id. The jury awarded the plaintiff the full
amount of his requested economic damages of $3377
but zero noneconomic damages. Id., 177, 179. The plain-
tiff filed a motion to set aside the jury's verdict as
inadequate and for additur pursuant to *Johnson*, which
the trial court granted. Id., 179. The trial court explained

---

[12] See *Childs* v. *Bainer*, supra, 235 Conn. 116 (upholding trial court's refusal
to order additur or new trial when jury awarded plaintiff approximately one
fifth of claimed economic damages and zero noneconomic damages because
"the cause, nature, and extent of the plaintiff's injuries were 'hotly con-
tested' "); *Ginsberg* v. *Fusaro*, 225 Conn. 420, 430, 432, 623 A.2d 1014 (1993)
(upholding trial court's refusal to order additur or new trial after jury
awarded only small portion of plaintiff's claimed economic damages and zero
noneconomic damages because issue of causation "was hotly contested").

Maldonado *v.* Flannery

that, because the jury had awarded the plaintiff the exact amount of his claimed economic damages, it necessarily had found that he was injured in the collision with the defendant and that the " 'verdict was inconsistent and inadequate as a matter of law.' " Id., 180.

On appeal, this court, overruling *Johnson*, held that the jury's failure to award noneconomic damages was not per se inconsistent as a matter of law. After reviewing the foregoing facts, we ordered the trial court to reinstate the jury's verdict because the evidence reasonably supported the jury's "conclusion that the plaintiff had not proven that he had suffered any *additional* pain as a result of the defendant's conduct." (Emphasis in original.) Id., 186; see id., 189–90 ("the jury could have accepted the evidence that it was advisable for the plaintiff to see his chiropractor more frequently than usual following the accident, but that the accident did not cause him actually to suffer greater pain than he already had experienced as a result of his preexisting condition"). *Wichers* thus eliminated the per se rule requiring the trial court to grant a motion for a new trial or additur in personal injury cases in which the jury awards economic damages and zero noneconomic damages, holding that "an award of economic damages that is not accompanied by an award of noneconomic damages is . . . not *always* inadequate as a matter of law." (Emphasis in original.) Id., 186.

This holding, although marking an important change in our law, must not be read too broadly because *Wichers* does not substitute the *Johnson* per se rule with an opposite one shielding split verdicts from judicial review altogether. Nor does it eliminate the discretionary standard by which appellate courts review a trial court's ruling on a motion to set aside a verdict and for additur. To the contrary, *Wichers* overruled *Johnson* precisely because its per se rule had *eliminated* the trial court's discretionary authority to assess the jury's

Maldonado *v.* Flannery

award on the basis of the particular facts and circumstances before it. Pursuant to *Wichers*, there is no automatic rule either requiring or prohibiting the trial court's exercise of discretion within the traditional legal framework described in part II of this opinion. The trial court must conduct its own independent assessment of the evidence, as "every juror ought to do in arriving at a verdict," and set aside the verdict only if it "finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence . . . or [was] governed by ignorance, prejudice, corruption or partiality . . . ." (Internal quotation marks omitted.) Id., 186–87. "The trial [court] has a broad legal discretion and [its] action will not be disturbed unless there is a clear abuse." (Internal quotation marks omitted.) Id., 187. But, in exercising its discretion, the trial court must demonstrate respect for the jury's fact-finding function, and a "mere doubt of the adequacy of the verdict is an insufficient basis [to set it aside]. . . . A conclusion that the jury exercised merely poor judgment is likewise insufficient." (Internal quotation marks omitted.) Id. The trial court's task, ultimately, is to "examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of [noneconomic damages]." Id., 188–89. *Wichers* holds that the "[*Johnson*] per se rule" is unnecessary because the foregoing traditional standard establishes "a system that allows inadequate awards to be remedied without sacrificing the discretion of either the jury or that of the trial court . . . ." Id., 187–88.

Since *Wichers*, we have had the opportunity to address a trial court's ruling on a motion to set aside a jury's verdict as inadequate in a split verdict case on two occasions. In *Gladu* v. *Sousa*, supra, 252 Conn. 190, which was decided on the same day as *Wichers*, we determined that certification had been improvidently granted and

Maldonado *v.* Flannery

dismissed the defendant's appeal from the Appellate Court's judgment affirming the trial court's judgment granting an additur after the jury had returned a split verdict. Id., 191–93. We reasoned that the trial court had "evaluated the evidence and the jury's award in a manner consistent with its statutory authority and our jurisprudence sanctioning the exercise of its discretion [to award an additur] in appropriate circumstances" and, therefore, that "the Appellate Court properly affirmed the trial court's judgment." (Footnote omitted.) Id., 193. *Gladu*, a companion to *Wichers*, likewise reaffirms the important role that a trial court's discretionary authority plays in scrutinizing the jury's award of damages in this context.

In *Schroeder* v. *Triangulum Associates*, supra, 259 Conn. 325, we confronted a substantially different set of facts than that presented in *Wichers*. The plaintiff in *Schroeder* was injured while making a delivery at the defendant's restaurant. Id., 328. The jury found the defendant liable for the plaintiff's injuries and the costs of his intrusive spinal fusion surgery but awarded nothing for the pain and permanent disability necessarily resulting from the surgical procedure. See id., 329, 333–34. The trial court denied the plaintiff's motion for additur, and we reversed. Id., 327. Applying the fact specific standard set forth in *Wichers*, we concluded that the incongruous award could not rationally be explained in light of the evidence necessarily credited by the jury in awarding the plaintiff's requested economic damages. We explained that "[t]he jury reasonably could not have initially found the defendant liable for the expense of the surgery but not responsible for any pain or disability attendant to such surgery." Id., 333. We observed that the spinal surgery was in stark contrast with the treatment in *Wichers*, in which the plaintiff "merely underwent additional chiropractic treatment for an aggravation of a preexisting injury, leaving the

Maldonado *v.* Flannery

jury free to determine whether the plaintiff had incurred any *additional* pain and suffering as a result of the defendant's negligence." (Emphasis added.) Id.[13]

*Wichers* and *Schroeder* illustrate the outer boundaries of the trial court's discretion to set aside a jury verdict when it is internally inconsistent or inadequate as a matter of law. At one end of the spectrum, *Wichers* holds that a jury that awards a plaintiff economic damages for personal injuries is not required, as a matter of law, to award noneconomic damages when the evidence supports the conclusion that the pain suffered by the plaintiff "was the same as what he had experienced

---

[13] In the wake of *Wichers*, the Appellate Court has had many opportunities to review trial court rulings on motions to set aside split verdicts. See *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 682–94, 188 A.3d 159 (2018) (upholding trial court's denial of motion for additur); *Cusano* v. *Lajoie*, 178 Conn. App. 605, 613–14, 176 A.3d 1228 (2017) (reversing trial court's grant of motion for additur); *DeEsso* v. *Litzie*, 172 Conn. App. 787, 794–804, 163 A.3d 55 (upholding trial court's denial of motion for additur), cert. denied, 326 Conn. 913, 173 A.3d 389 (2017); *Melendez* v. *Deleo*, 159 Conn. App. 414, 424, 123 A.3d 80 (2015) (upholding denial of motion for additur and/or to set aside verdict); *Sigular* v. *Gilson*, 141 Conn. App. 581, 592–94, 62 A.3d 564 (upholding trial court's denial of motion to set aside verdict), cert. granted, 308 Conn. 948, 67 A.3d 291 (2013) (appeal withdrawn August 1, 2013); *Silva* v. *Walgreen Co.*, 120 Conn. App. 544, 560, 992 A.2d 1190 (2010) (reversing trial court's grant of motion for additur); *Benedetto* v. *Zaku*, 112 Conn. App. 467, 473–74, 963 A.2d 94 (2009) (upholding trial court's grant of motion for additur); *Lombardi* v. *Cobb*, 99 Conn. App. 705, 709–10, 915 A.2d 911 (2007) (upholding trial court's grant of motion for additur); *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, 92 Conn. App. 481, 485–91, 886 A.2d 461 (2005) (reversing trial court's denial of motion for additur), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006); *Smith* v. *LeFebre*, 92 Conn. App. 417, 427, 885 A.2d 1232 (2005) (reversing trial court's grant of motion for additur); *Turner* v. *Pascarelli*, supra, 88 Conn. App. 730–31 (reversing trial court's grant of motion for additur); *Schettino* v. *Labarba*, 82 Conn. App. 445, 449–50, 844 A.2d 923 (2004) (reversing trial court's grant of motion for additur); *Snell* v. *Beamon*, 82 Conn. App. 141, 147, 842 A.2d 1167 (2004) (upholding trial court's grant of motion for additur); *Elliott* v. *Larson*, 81 Conn. App. 468, 476–78, 840 A.2d 59 (2004) (upholding trial court's grant of motion for additur); *Santa Maria* v. *Klevecz*, 70 Conn. App. 10, 12–16, 800 A.2d 1186 (2002) (upholding trial court's denial of motion to set aside verdict). Given the fact specific nature of the Appellate Court's analyses, and the divergent conclusions reached, a comprehensive review and reconciliation of these cases are outside the scope of this opinion.

Maldonado *v.* Flannery

before his accident with the defendant.'' *Wichers* v. *Hatch*, supra, 252 Conn. 190. *Schroeder*, at the other extreme, holds that a verdict must be considered legally inconsistent if the jury awards zero noneconomic damages but full economic damages for an injury requiring the plaintiff to undergo spinal fusion surgery as a result of the defendant's negligence. See *Schroeder* v. *Triangulum Associates*, supra, 259 Conn. 333–34. Although these extreme cases do not provide a formula for deciding the cases falling in between; see footnote 13 of this opinion; they are instructive nonetheless because they demonstrate the fact intensive nature of the requisite analysis.

To summarize, *Wichers* marked the end of the idea that split verdicts in Connecticut automatically must be set aside because they necessarily are inconsistent as a matter of law, but its holding should not be read expansively to sanction all split verdicts. A split verdict is examined using the same analysis applied generally to determine whether a verdict should be set aside as inadequate "in light of the circumstances of the particular case before it.'' *Wichers* v. *Hatch*, supra, 252 Conn. 188. Those circumstances include the possible incongruence between the economic and noneconomic components of a jury's damages award, which can signal a legal inconsistency, at least in the absence of a reasonable (i.e., evidence based) explanation. Noneconomic damages are not an optional element of the damages award if the physical injuries that serve as the basis for the jury's award of economic damages cause the plaintiff to experience any pain and suffering.[14] In the

_____

[14] The jury was instructed in accordance with the standard jury instruction regarding damages in a negligence case, which provides in relevant part: "The rule of damages is as follows. Insofar as money can do it, the plaintiff is to receive fair, just and reasonable compensation for *all injuries and losses*, past and future, which are proximately caused by the defendant's proven negligence.

* * *

"A plaintiff who is injured by the negligence of another is entitled to be compensated for *all physical pain and suffering, mental and emotional*

Maldonado *v.* Flannery

case of a split verdict, the underlying concern is not simply
the potential illogic in a jury's failure to award noneco-
nomic damages for the pain and suffering that one
would normally associate with the physical injuries that
the jury, by awarding economic damages, necessarily

*suffering*, loss of the ability to enjoy life's pleasures, and permanent impair-
ment or loss of function that (he/she) proves by a fair preponderance of
the evidence to have been proximately caused by the defendant's negli-
gence. . . .

"A plaintiff who is injured by the negligence of another is entitled to be
compensated for mental suffering caused by the defendant's negligence for
the results which proximately flow from it in the same manner as (he/she)
is for physical suffering. . . ." (Emphasis added.) Connecticut Civil Jury
Instructions 3.4-1, available at https://jud.ct.gov/JI/Civil/Civil.pdf (last visited
April 26, 2022). The defendants do not claim that this jury instruction was
erroneous. Nor do they claim that the plaintiffs were not entitled to compen-
sation for all of the pain and suffering proximately caused by Flannery's neg-
ligence.

We agree with the dissent that the *amount* of noneconomic damages is
a matter " 'peculiarly within the province of the [trier] . . . .' " See, e.g.,
*Manning* v. *Michael*, 188 Conn. 607, 616, 452 A.2d 1157 (1982). This is
particularly true in personal injury and wrongful death actions because of
the difficulties inherent in placing a monetary value on noneconomic losses.
See, e.g., *Vajda* v. *Tusla*, 214 Conn. 523, 533, 572 A.2d 998 (1990) (recognizing
that "[a]n award of damages for pain and suffering is peculiarly within the
province of the trier of fact" and "that it is difficult to measure pain and
suffering in terms of money"); *McKirdy* v. *Cascio*, 142 Conn. 80, 84–85, 111
A.2d 555 (1955) ("[T]he problem of estimating damages for the loss of . . .
life with any exactness is . . . one beset with insurmountable difficulties.
. . . For this reason we have frequently said that the amount of damages
recoverable in actions for death is peculiarly within the province of the
jury." (Citation omitted; internal quotation marks omitted.)). But, when, as
here, the evidence necessarily credited by the jury establishes the *existence*
of such harm, our law is clear that the plaintiff is legally entitled to be
compensated. The fact that noneconomic damages "cannot be computed
by a mathematical formula . . . [and] there is no [ironclad] rule for the
assessment of damages" does not relieve the jury from quantifying, to the
best of its ability, the amount of damages to which the plaintiff is entitled.
(Internal quotation marks omitted.) *Vajda* v. *Tusla*, supra, 533. So long as
the amount awarded "falls somewhere within the necessarily uncertain
limits of just damages," the jury's award is reasonable. *McKirdy* v. *Cascio*,
supra, 86. Stated another way, it is up to the jury to determine the *amount*
of noneconomic damages to award a plaintiff for pain and suffering, but,
once the existence of pain and suffering is established, the jury is not free
to award zero damages as compensation.

Maldonado *v.* Flannery

determined were proximately caused by the defendant's negligence. The deeper concern is that the inconsistency may indicate that the verdict reflects an impermissible compromise or otherwise is the product of improper influence, whether it be ignorance, mistake, prejudice, or emotion.[15] Indeed, these concerns are sufficiently prominent that a standard jury instruction was promulgated for use when a jury returns a split verdict, pursuant to which the trial court sends the case back to the jury for reconsideration. See footnote 11 of this opinion.

These additional considerations will not be implicated in every case in which a jury returns a split verdict. We mention them because the possibility of an inconsistent verdict in this particular context should not be overlooked by the trial court.

IV

WHETHER THE TRIAL COURT ABUSED ITS
DISCRETION IN GRANTING THE
PLAINTIFFS' JOINT MOTION
FOR ADDITURS

With these principles in mind, we address whether the Appellate Court properly reversed the judgment of

---

[15] In certain circumstances, for example, the split verdict may reflect a jury compromise in which "some of the jurors . . . conceded liability against their judgment, and some . . . reduced their estimate of the damages in order to secure an agreement of liability with their fellow jurors." (Internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 333, 736 A.2d 889 (1999). Or, it may reflect a form of jury nullification in which the jury refused, for whatever reason, to award the plaintiff the damages to which he or she legally is entitled on the basis of the jury's findings on issues of liability, causation, and medical expenses. See, e.g., *Todd* v. *Bercini*, 371 Pa. 605, 607–608, 92 A.2d 538 (1952) ("If [the plaintiff] was entitled to a verdict from the defendant because of the injuries he inflicted [on] her as the result of his negligence, she was entitled to *all* that the law provides in such a case. And the items of pain, suffering and inconvenience, as well as loss of wages and impairment of earning power, are inevitable concomitants with grave injuries when suffered by a [wage earner]. A jury may not eliminate pain from wounds when all human experience proves the existence of pain, and it may not withhold lost wages when the evidence in the case uncontradictedly establishes the loss of wages as the result

Maldonado *v.* Flannery

the trial court setting aside the jury's verdict and granting the plaintiffs' joint motion for additurs. The Appellate Court relied on two grounds in reaching its decision. First, the Appellate Court determined that the trial court's memorandum of decision "fail[ed] to identify the part of the record that supported its conclusion that the jury's failure to award noneconomic damages was unreasonable under the facts of this case . . . ." *Maldonado* v. *Flannery*, supra, 200 Conn. App. 9.[16] Second, even if the trial court's memorandum of decision was sufficiently detailed, the Appellate Court, upon conducting its own "fact intensive analysis" of the "evidential underpinnings" of the jury's verdict and

of the negligence [that] they, the jur[ors], have adjudicated against the responsible defendant. When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then neglectfully, indifferently, or capriciously cut off a portion of that loaf as it hands it to the plaintiff." (Emphasis in original.)).

[16] It is not entirely clear whether the Appellate Court concluded that the trial court had failed to articulate the evidentiary basis for its threshold conclusion that the jury's award was unreasonable or, rather, whether the deficiency lay in the trial court's failure to articulate the evidentiary basis for the specific amount of the additur awarded to the plaintiffs (i.e., $8000 to Maldonado and $6500 to Hernandez). The passage quoted in the text accompanying this footnote indicates that the problem existed in the trial court's threshold determination of unreasonableness. See *Maldonado* v. *Flannery*, supra, 200 Conn. App. 8 (observing that trial court failed to "delineate the specific facts that led to its decision to grant the plaintiffs' joint motion for additurs"). At another point, however, the Appellate Court states that "the [trial] court's memorandum of decision granting the plaintiffs' joint motion for additurs lacks the necessary identification of the specific facts that would justify an additur of $8000 to Maldonado and $6500 to Hernandez." Id. We focus on the adequacy of the trial court's explanation for its threshold determination that the jury's verdict was unreasonable because the articulation requirement exists to facilitate appellate review of that particular determination. See *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 284 (trial court is required to "explain the specific reasons that led the court to conclude that the award shocked the conscience of the court"); cf. *Wichers* v. *Hatch*, supra, 252 Conn. 189 (requiring trial court to examine "[t]he evidential underpinnings" to determine whether there is reasonable basis in evidence to support jury's verdict (internal quotation marks omitted)). Nonetheless, we address the defendant's challenge regarding the amount of the additurs in footnote 17 of this opinion.

Maldonado *v.* Flannery

the full evidentiary record; (internal quotation marks omitted) id.; concluded that "the jury reasonably could have found that the plaintiffs failed to prove noneconomic damages for pain and suffering caused by the 2016 accident." Id., 13. We review each conclusion in turn.

A

Trial Court's Explanation of the Basis for the Additur Award Was Sufficient

As we previously discussed, our case law requires a trial court ordering an additur to explain the basis for its ruling in sufficient detail "to aid the reviewing court in its determination of whether the trial court properly exercised its discretion." *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 284. As we explained in *Saleh*, "[m]erely stating that an award shocks the conscience or the sense of justice of the court or that the award does not fall within the necessarily uncertain limits of fair and reasonable compensation will not be sufficient." Id., 283–84. Instead, the trial court is required to state the evidentiary basis for its ruling and the corresponding reasons supporting its conclusion that the jury's verdict is manifestly unjust. Id., 284. This requirement is "not [imposed] to discourage the trial court from granting remittitur [or additur] in those cases [in which] it is warranted, but rather to aid the reviewing court in its determination of whether the trial court properly exercised its discretion." Id.

We conclude that the trial court's memorandum of decision in the present case provided sufficient detail to explain the evidentiary and logical basis for the court's decision to grant the plaintiffs' joint motion for additurs. The trial court stated that it was "[c]onscious of its obligation to view the evidence in the light most favorable to sustaining the jury's verdict and the jury's right to make determinations of witness credibility," and noted

Maldonado *v.* Flannery

that "the jury could have reasonably concluded that [the plaintiffs] were [not] credible witnesses." Nevertheless, in reaching its decision to award the plaintiffs most of their claimed economic damages, "the jury must have credited and relied on some evidence. Because the jury explicitly awarded damages based on the plaintiffs' medical costs, the court conclude[d] that the jury must have, at a minimum, credited those records." As a corollary to this conclusion, the trial court determined that, "by necessary implication, [the jury must have] concluded that the treatments set forth in those bills were necessary and reasonable, and that the injuries being treated during those visits were proximately caused by the defendant's negligence."

The trial court's memorandum of decision demonstrates that it thoroughly reviewed the plaintiffs' medical records. The trial court described the specific nature of the medical expenses incurred by the plaintiffs and noted that each plaintiff had undergone months of chiropractic care, which included manipulation of the spine and neck, application of hot and cold packs, electrical stimulation, and an epidural steroid injection in the lumbar region. The trial court observed, among other things, that, although there was a disagreement between the expert witnesses regarding the nature and severity of the plaintiffs' injuries, they agreed that the plaintiffs had sustained "sprains and/or strains to their neck and lumbar regions" as a result of the motor vehicle collision. The trial court determined that "the inherent, underlying symptoms necessary to make these treatments 'reasonable and necessary' in the eyes of the jury, as well as the treatments themselves, all bespeak a level of physical pain suffered by [the plaintiffs]. Even though the jury did not award the plaintiffs all of their claimed medical expenses, the jury did award the plaintiffs the vast majority of those expenses and did so with such exactitude that the court can reach no other

Maldonado *v.* Flannery

conclusion than that the jury concluded [that] those treatments were reasonable and necessary. It would be illogical and inconsistent to conclude that the treatments credited by the jury were reasonable and necessary but that they were not made so because of any neck or back pain suffered by the plaintiffs.''

We conclude that the foregoing articulation of the trial court's grounds for granting the plaintiffs' joint motion for additurs was sufficient to permit appellate review. On the basis of the trial court's explanation, a reviewing court is able to identify the evidence and jury findings that the trial court believed, in the exercise of its discretion, warranted the relief granted. Because a reviewing court can assess the trial court's reasoning for logical or legal flaws and determine whether the trial court abused its discretion by ordering the additurs, we disagree with the Appellate Court that the trial court failed to identify "the specific facts that would justify an additur" award for each plaintiff.[17] *Maldonado* v. *Flannery*, supra, 200 Conn. App. 8.

---

[17] The defendants contend that the trial court's memorandum of decision "provide[s] no basis whatsoever justifying or explaining" the amount of noneconomic damages awarded to the plaintiffs: $8000 to Maldonado and $6500 to Hernandez. We disagree. The trial court explained that these amounts were calculated on the basis of "the medical bills from New Britain Injury & Spine and Jefferson Radiology [that] the jury necessarily credited in its verdict." This explanation certainly is sufficient to permit appellate review. See footnote 6 of this opinion.

Alternatively, the defendants contend, without citation to legal authority, that an additur award in the amount of one dollar of noneconomic damages for every one dollar of medical expenses awarded by the jury is excessive because "[a]n award of less than one dollar for pain and suffering for every dollar of . . . treatment for pain would have been constitutionally permissible." This claim is inadequately briefed, and, therefore, we decline to address it. See, e.g., *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008) ("[When] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . [M]ere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Citation omitted; internal quotation marks omitted.)).

Maldonado *v.* Flannery

B

Trial Court Did Not Abuse Its Discretion by Granting
the Plaintiffs' Joint Motion for Additurs

We next address whether the trial court abused its
discretion by granting the plaintiffs' joint motion for addi-
turs. At trial, the defendants admitted that Flannery negli-
gently rear-ended the plaintiffs' motor vehicle because
she "fail[ed] to keep a proper lookout . . . ." Thus, the
sole issues to be decided by the jury were causation and
damages, i.e., whether the plaintiffs sustained damages in
the accident that were proximately caused by Flannery's
negligence. With respect to causation and damages, the
expert witnesses for both the defendants and the plain-
tiffs agreed that Flannery's negligence caused the plain-
tiffs to incur personal injuries that necessitated medical
treatment. As the trial court pointed out, the defendants'
own expert witness, Lieponis, testified "that both plain-
tiffs sustained sprains and/or strains to their neck and
lumbar regions" and disputed only "the extent [and per-
manency] of the plaintiffs' injuries . . . ."

With respect to Maldonado, Lieponis testified: "[He]
sustained musculoskeletal injuries to the cervical, tho-
racic, and, to a lesser degree, the thoracic spine. It is
reasonable and appropriate to treat these [injuries] with
either physical therapy or chiropractic care, which he
received. It is reasonable and appropriate, based on per-
sistent symptoms, to obtain an MRI, which [Maldonado]
did, and I would attribute the need for that MRI to the
motor vehicle accident. I think, in this particular case,
the continued use of chiropractic care without significant
improvement was to a degree beyond what I would have
recommended or what I believe is the standard of care
for the management of this type of problem." In Lieponis'
expert medical opinion, Maldonado had not suffered a
permanent medical impairment and would not need "any

Maldonado *v.* Flannery

future treatment directly attributable to the motor vehicle accident.''

Similarly, Lieponis testified that Hernandez had ''sustained a strain of the spine that included the cervical, thoracic, and lumbar areas.'' Lieponis believed that the ''[d]iagnostic tests that . . . Hernandez had, including the MRI, [were] reasonable and attributable to the motor vehicle accident'' and that it was reasonable and appropriate to treat his injuries ''with either physical therapy or chiropractic modalities'' for ''a six to nine month period of time . . . .'' However, in Lieponis' expert medical opinion, the ''close to fifty chiropractic treatments'' Hernandez underwent were ''outside what [he] would typically expect in terms of continuing treatment without significant improvement, without referring to another physician . . . to determine why the patient was not responding to the treatment that was being rendered.'' Lieponis did not believe that Hernandez suffered a permanent medical impairment as a result of the accident or that future medical treatment was necessary.

In addition to the expert medical testimony, the jury was presented with exhibits documenting the plaintiffs' medical treatment. As the trial court observed in its memorandum of decision, these exhibits show that Maldonado was ''treated at New Britain Injury & Spine approximately sixty-two times'' between the date of the accident and August, 2018. These treatments ''involved chiropractic manipulation of . . . Maldonado's spine and neck, application of hot and cold packs, electrical stimulation, and, on occasion, mechanical traction.'' Similarly, Hernandez was ''treated at New Britain Injury & Spine approximately forty-nine times'' after the accident. ''These treatments involved chiropractic manipulation of . . . Hernandez' spine and neck, application of hot and cold packs, and electrical stimulation.'' Furthermore, ''on one occasion, both . . . Maldonado and . . . Hernan-

dez received epidural steroid injections in their lumbar regions . . . .''

On the basis of the foregoing evidence, the jury found in favor of the plaintiffs and awarded Maldonado $17,228.38 of $18,953.38 of his claimed medical expenses and $1800 in future economic damages. The jury awarded Hernandez $11,864.94 of $13,254.94 of his claimed medical expenses. According to the verdict form, the jury awarded the plaintiffs all of their claimed medical expenses for their visits to the Hospital of Central Connecticut on the day of the accident, as well as their subsequent MRIs, X-rays, and physical therapy. With respect to the plaintiffs' chiropractic treatment, the jury awarded Maldonado $7035 of his $8760 in claimed medical expenses and Hernandez $5670 of his $7060 in claimed medical expenses. The trial court determined that these ''slight reductions'' to the plaintiffs' claimed chiropractic costs demonstrated that ''the jury was not making these reductions in a generalized way. Instead, the jury was choosing not to credit individual [chiropractic] treatments, [and], by the same token, was specifically choosing to credit others.'' The trial court therefore concluded ''that the jury, at a minimum, credited the plaintiffs' medical bills and, by necessary implication, concluded that the treatments set forth in those bills were necessary and reasonable and that the injuries being treated during those visits were proximately caused by [Flannery's] negligence.'' Because these medical treatments, which were reasonable and necessary ''in the eyes of the jury,'' inherently ''bespeak a level of physical pain suffered by [the plaintiffs],'' the trial court held that ''[i]t would be illogical and inconsistent to conclude that the treatments credited by the jury were reasonable and necessary but that they were not made so because of any neck or back pain suffered by the plaintiffs.'' Accordingly, the trial court granted the plaintiffs' joint motion for additurs.

Maldonado *v.* Flannery

We conclude that the trial court did not abuse its discretion by granting the plaintiffs' joint motion for additur. As the foregoing recitation of facts reflects, the jury necessarily credited the plaintiffs' medical bills and/or the testimony of the defendants' expert witness, both of which support the jury's finding that the plaintiffs suffered back injuries as a result of the accident that necessitated medical treatment. The trial court reasonably concluded that the inherent purpose of this medical treatment, which included chiropractic manipulations and epidural steroid injections, was to treat pain and suffering. Stated another way, the plaintiffs' medical treatments were not merely "diagnostic or prophylactic measure[s]" from which the jury reasonably could have found that the plaintiffs experienced no pain. *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 686, 188 A.3d 159 (2018); see id., 687 (jury reasonably concluded that plaintiff did not experience any compensable pain related to accident because medical expenses were for diagnostic and prophylactic treatment). Instead, on the present factual record, the jury awarded the plaintiffs economic expenses for medical treatment, "the purpose of which was to alleviate pain and to improve functioning . . . ." *Fileccia* v. *Nationwide Property & Casualty Ins. Co.*, 92 Conn. App. 481, 489, 886 A.2d 461 (2005), cert. denied, 277 Conn. 907, 894 A.2d 987 (2006); see id. (jury verdict "finding that the plaintiff, by virtue of the accident, had suffered an injury requiring treatments and medication, the purpose of which was to alleviate pain and to improve functioning," was inconsistent with award of zero noneconomic damages). It is inconsistent for the jury to conclude, on the one hand, that the plaintiffs suffered personal injuries in the accident that necessitated this type of medical treatment but, on the other hand, that the plaintiffs experienced no pain or suffering as a result of the accident that warranted an award of noneconomic dam-

Maldonado *v.* Flannery

ages. Because the trial court could have reasonably concluded that the jury's verdict was inconsistent on this particular factual record, its decision to grant the plaintiffs' joint motion for additurs was not an abuse of discretion.

The dissent posits that a jury is not required to find that "*any* instance of pain and suffering" is compensable and that the jury can choose to award zero damages for pain and suffering proximately caused by a tortfeasor's negligence. (Emphasis in original.) Footnote 1 of the dissenting opinion. Relatedly, the dissent suggests that the jury rationally may have found that the plaintiffs sustained injuries resulting from Flannery's negligence but nonetheless experienced no "compensable" pain and suffering on the theory that their pain and suffering was so "brief or innocuous" that no compensation was required. Id. These claims are flawed in four respects.

First, the very notion of noncompensable pain and suffering is inconsistent with the manner in which the parties litigated the case and the trial court instructed the jury. Consistent with our civil jury instructions, the trial court instructed the jury that the plaintiffs were entitled "to receive fair, just and reasonable compensation for *all injuries and losses* that are proximately caused by the defendant's negligence.

\* \* \*

"A plaintiff who is injured by the negligence of another is entitled to be compensated for *all* physical pain and suffering, and mental and emotional suffering, and the loss of the ability to enjoy life's pleasures that are legally caused by the defendant's negligence. . . .

"A plaintiff who is injured by the negligence of another is entitled to be compensated for mental suffering caused by the defendant's negligence for the results that proximately flow from it in the same manner as the

plaintiffs are for physical suffering.'' (Emphasis added.) See footnote 14 of this opinion. The jury was not free to disregard the trial court's instructions on the law.

Second, the dissent cites no authority from this court that would allow a jury to refuse to award *any* damages upon determining that a defendant's negligence caused a plaintiff pain, or only minor or brief pain. We have located no precedent of this court to support that novel proposition. To the contrary, the purpose of an award of compensatory damages ''is to restore an injured party to the position he or she would have been in if the wrong had not been committed.'' (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 248, 905 A.2d 1165 (2006). To accomplish this purpose, a plaintiff must recover *all* of the damages suffered as a result of a tortfeasor's negligence, regardless of whether those damages are economic or noneconomic in nature. See, e.g., *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 604, 724 A.2d 497 (1999) (it is ''[a] well established proposition that a tortfeasor is liable for all damages proximately caused by its negligence''). To conclude otherwise risks condoning jury compromise or nullification and undermining the principles animating tort law, namely, ''compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . .'' (Internal quotation marks omitted.) *Doe* v. *Cochran*, 332 Conn. 325, 363, 210 A.3d 469 (2019); see footnote 15 of this opinion.

Third, putting aside the dubious legal validity of the dissent's theory, the evidence in the present case does not support a reasonable inference that the plaintiffs' injuries were either brief or innocuous. The plaintiffs' treatment was lengthy in duration, lasting approximately two years for Maldonado and eight months for Hernandez. The nature of the plaintiffs' injuries, which

Maldonado *v.* Flannery

the jury reasonably and necessarily found required such invasive treatment as electrical stimulation, mechanical traction, and epidural steroid injections, cannot accurately be characterized as innocuous. See Merriam-Webster's Collegiate Dictionary (11th Ed. 2004) p. 645 (defining "innocuous" as "producing no injury" or "harmless").

Fourth, to the extent that the dissent suggests that the jury reasonably could have found that the plaintiffs suffered *no* pain or suffering, we also disagree. The very medical records on which the jury must have relied to award the plaintiffs their medical expenses demonstrate unequivocally that *pain* was the precipitating and ongoing reason for the treatment that the jury found to be compensable.[18] Indeed, although the dissent reminds us that " 'we must examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion,' " it then provides a theoretical explanation for the jury's split verdict without reference to the particular evidentiary record in this case. Our own examination of the evidentiary record leads us to conclude that the trial court acted within its discretion when it determined that the jury could not consistently have found, on the one hand, that the aforementioned medical treatments were reasonable and necessary and, on the other hand, that the plaintiffs suffered no pain and suffering.

---

[18] The epidural steroid injections are the most salient example of pain treatment credited by the jury. The referring provider determined that an epidural steroid injection was appropriate in light of ongoing lumbar pain, and we are not aware of any evidence suggesting an alternative explanation for that treatment. More broadly, the medical records are replete with references to the plaintiffs' pain symptoms that prompted the rendering of medical care, beginning with the initial visit to the hospital emergency room. The hospital records also reflect that the plaintiffs both were prescribed anti-inflammatory medication and muscle relaxants, all of which were ordered to treat pain. Likewise, the medical records demonstrate that the chiropractic treatment found to be necessary by the jury was rendered for the purpose of alleviating the plaintiffs' back and neck pain.

Maldonado *v.* Flannery

We also reject the defendants' argument that the Appellate Court properly reversed the judgment of the trial court on the basis of the plaintiffs' "conflicting and inconsistent" testimony; *Maldonado* v. *Flannery*, supra, 200 Conn. App. 10; which the jury reasonably could have found "lacked credibility." Id., 13. The trial court explicitly acknowledged that "the jury could have reasonably concluded that [the plaintiffs] were [not] credible witnesses." The trial court was "[c]onscious of its obligation to view the evidence in the light most favorable to sustaining the jury's verdict and the jury's right to make determinations of witness credibility," and, therefore, did not rely on the plaintiffs' conflicting or inconsistent testimony in ruling on the plaintiffs' joint motion for additurs. Instead, the trial court relied on the findings of harm and causation necessarily inherent in the jury's verdict awarding the plaintiffs' claimed damages for the treatment reflected in their respective medical bills, which the court reasonably determined the jury must have credited to arrive at its verdict and award in favor of the plaintiffs.

The defendants also contend that the trial court's additur award was improper under *Wichers* because the plaintiffs both had preexisting back and neck conditions, which the jury reasonably could have found were the cause of their pain and suffering following the 2016 collision. We reject this claim. As we previously explained, *Wichers* did not establish a per se rule automatically requiring or prohibiting a trial court from awarding an additur of noneconomic damages. Instead, *Wichers* rejected the *Johnson* per se rule declaring all split verdicts inconsistent as a matter of law and replaced it with a more flexible, fact sensitive approach. See *Wichers* v. *Hatch*, supra, 252 Conn. 181 (stating that "a case-specific standard should apply to the instance in which a party seeks to have a verdict set aside on the basis that it is legally inadequate").

Maldonado *v.* Flannery

*Wichers* is factually distinguishable from the present case because the plaintiff in that case was receiving medical treatment "as part of a monthly maintenance program" for a preexisting neck impairment at the time of the accident. Id., 177. The plaintiff's antecedent neck impairment, which was both traumatic and organic in origin, caused the plaintiff to suffer ongoing pain and "a reduced range of motion" at the time of the accident. Id. In light of the plaintiff's preexisting medical condition and ongoing medical treatment, we reasoned that "the jury could have accepted the evidence that it was advisable for the plaintiff to see his chiropractor more frequently than usual following the accident, but that the accident did not cause him actually to suffer greater pain than he already had experienced as a result of his preexisting condition. Certainly, the jury reasonably could have found that the accident had not aggravated the plaintiff's condition, and that his pain was the same as what he had experienced before his accident with the defendant. Thus, there was a sufficient evidentiary basis for the jury's verdict." Id., 189–90.[19]

Unlike the plaintiff in *Wichers*, neither Maldonado nor Hernandez was undergoing medical treatment for a preexisting medical condition at or near the time the defendant negligently rear-ended their motor vehicle.

[19] The dissent expresses concern that our holding today represents a "retreat" from *Wichers*. The concern is groundless—*Wichers* remains good law, the principles articulated therein remain valid, and its holding applies to cases involving comparable factual circumstances. To be clear, however, nothing in *Wichers* or any other case decided by this court suggests that a trial court must deny a motion for additur, even though it discerns an inconsistency in a split verdict that cannot be explained under any reasonable view of the evidentiary record. *Wichers* acknowledges this limitation on a court's deference to the jury's verdict in the very language quoted by the dissent: " '[T]he conclusion of a jury, if one at which honest [jurors] acting fairly and intelligently might arrive *reasonably*, must stand . . . .' " (Emphasis added.), quoting *Wichers* v. *Hatch*, supra, 252 Conn. 189. We have emphasized throughout this opinion that the watchword in this context is *reasonableness*.

343 Conn. 150 MAY, 2022 193

Maldonado *v.* Flannery

Although there was evidence that both plaintiffs had degenerative disc changes of nontraumatic etiology, and that Maldonado had received treatment for a back and neck injury sustained in a motor vehicle accident in 2014 and "chronic pain/sciatica" in 2015, the parties presented no evidence from which the jury reasonably could have found that the pain associated with the injuries for which the plaintiffs were treated following the 2016 collision was the same in nature or degree as that related to any preexisting conditions.[20] On the basis of the evidence admitted at the trial, the jury could not have found that it was reasonable and necessary for the plaintiffs to undergo months of chiropractic manipulations and a steroid injection as a result of the injuries sustained in 2016 and, at the same time, that the plaintiffs suffered no compensable pain as a result of these injuries. Because the factual record in the present case contains no "reasonable basis in the evidence for the jury's [split] verdict"; (internal quotation marks omitted) *Wichers* v. *Hatch*, supra, 252 Conn. 189; the trial court did not abuse its discretion by granting the plaintiffs' joint motion for additurs.

V

CONCLUSION

After a careful review of the record, we conclude that the trial court did not abuse its discretion by granting the plaintiffs' joint motion for additurs. Because the defendants declined to accept the trial court's additur award; see footnote 7 of this opinion; a new trial is required.[21]

[20] Indeed, there is no evidence in the record indicating that Hernandez ever experienced any back or neck pain prior to the 2016 collision. Nor is there any evidence that he ever was treated for any back or neck condition prior to the collision.

[21] "Ordinarily the reversal of a jury verdict requires a new trial of all the issues in the case," unless there is "error as to one issue . . . [that] is separable from the general issues . . . ." (Internal quotation marks omitted.) *Schroeder* v. *Triangulum Associates*, supra, 259 Conn. 334. As we explained in *Schroeder*, "issues of liability and damages are not separable

Maldonado *v.* Flannery

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for a new trial as to causation and damages only.

In this opinion McDONALD, D'AURIA and KAHN, Js., concurred.

ROBINSON, C. J., dissenting. I respectfully disagree with the majority's conclusion that the trial court did not abuse its discretion in granting the joint motion for additurs filed by the plaintiffs, William Maldonado and Geovanni Hernandez, on the ground that the jury in their negligence action against the defendants, Kelly C. Flannery and Michael T. Flannery, could not reasonably have found that they incurred economic damages for medical expenses for their injuries but no noneconomic damages from those injuries. Instead, I agree with the Appellate Court's conclusion that the jury could have reasonably found that the plaintiffs failed to prove non-economic damages for pain and suffering. *Maldonado* v. *Flannery*, 200 Conn. App. 1, 13, 238 A.3d 127 (2020). Because I would affirm the judgment of the Appellate Court directing the trial court to deny the plaintiffs' motion and to render judgment in accordance with the jury's verdict; see id.; I respectfully dissent.

At the outset, I note my agreements with the facts and procedural history set forth by the majority. See part I of the majority opinion. I also agree with the standard of review stated by the majority pursuant to *Ashmore* v. *Hartford Hospital*, 331 Conn. 777, 781–82, 208 A.3d 256 (2019), and *Wichers* v. *Hatch*, 252 Conn. 174, 181, 745 A.2d 789 (2000), requiring that we review

but instead are inextricably interwoven . . . thus requiring a new trial as to both liability and damages unless the court can clearly see that this is the way of doing justice in [a] case.'' (Citation omitted; internal quotation marks omitted.) Id. In this case, because the defendants have admitted negligence, a new trial is required as to causation and damages only.

343 Conn. 150 MAY, 2022 195

Maldonado *v.* Flannery

a decision of the trial court to order an additur for an abuse of discretion. See part II B of the majority opinion.

I begin by emphasizing my agreement with the legal principles set forth by the majority's comprehensive review of the law limiting a trial court's authority to set aside a jury verdict. See part II A of the majority opinion. The majority accurately cites our precedents stating that the only cases in which the jury's verdict should be set aside are those in which the verdict is " '*so clearly against the weight of the evidence* in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or [was] governed by ignorance, prejudice, corruption or partiality . . . .' " (Emphasis added.) Id., quoting *Birgel* v. *Heintz*, 163 Conn. 23, 27, 301 A.2d 249 (1972). Further, in *Wichers*, this court described the limit on a trial court's discretion to set aside a verdict: "[I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, *the trial court should let the jury work* [*its*] *will*." (Emphasis added; internal quotation marks omitted.) *Wichers* v. *Hatch*, supra, 252 Conn. 189; see *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 280, 32 A.3d 318 (2011) ("we consistently have held that a court should exercise its authority to order a remittitur rarely—only in the most exceptional of circumstances"). I add to these principles that it "is axiomatic that [t]he amount of damages awarded is a matter peculiarly within the province of the jury . . . . Moreover, there is no obligation for the jury to find that every injury causes pain, or the amount of pain alleged. . . . Put another way, [i]t is the jury's right to accept some, none or all of the evidence presented. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The

Maldonado *v.* Flannery

[jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject.'' (Internal quotation marks omitted.) *Cusano* v. *Lajoie*, 178 Conn. App. 605, 609, 176 A.3d 1228 (2017); see *Munn* v. *Hotchkiss School*, 326 Conn. 540, 579, 165 A.3d 1167 (2017) (''[j]uries may differ widely in the conclusions [that] they reach in what may be apparently similar cases, and, in fact, in any given case one jury may arrive at a result substantially different from that of another jury'' (internal quotation marks omitted)).

With these principles in mind, I address the majority's conclusion that the trial court did not abuse its discretion by granting the plaintiffs' joint motion for additurs in the present case. The main argument advanced by both the trial court and the majority is that, because the jury's verdict as to economic damages indicates that it credited the plaintiffs' medical bills for a significant number of treatments, with only ''slight reductions'' to individual chiropractic treatments, and because those procedures were specifically to treat pain rather than for diagnostic or prophylactic purposes, it was, therefore, not reasonable for the jury to determine that the plaintiffs' pain and suffering were not worth more than zero noneconomic damages. See part IV B of the majority opinion. Although this contention might have merit in other cases presenting more severe injuries, it does not in the present case. Specifically, I do not agree that it was unreasonable for the jury not to have come to the same conclusion as the trial court that ''[b]oth the inherent underlying symptoms . . . as well as the treatments themselves, all bespeak a level of physical pain suffered'' by the plaintiffs. Put differently, the trial court's conclusion, which is embraced by the majority, incorrectly suggests that the jury had no choice but to conclude that the plaintiffs experienced compensable pain and suffering, given the injuries and the treatments that formed the basis for its award of economic damages.

Maldonado *v.* Flannery

In my view, the majority's conclusion to uphold the additur ordered by the trial court departs from the "assumption" that underlies our analysis, namely, "that . . . the jury did exactly what it intended to do." *Wichers* v. *Hatch*, supra, 252 Conn. 189. Thus, on review, we must determine whether it was reasonable for the jury to find that the plaintiffs did not experience compensable pain and suffering as a result of the injuries and the treatments that the jury found the plaintiffs had experienced. The trial court's decision to set aside the jury's verdict means it determined that it was unreasonable for the jury to make that finding. See id., 188–89 ("the trial court should examine the evidence *to decide whether the jury reasonably could have found* that the plaintiff had failed in his proof of the issue" (emphasis added)). I fail to see, and the trial court failed to articulate, why it was unreasonable for the jury not to have determined that the symptoms and the treatments at issue in the present case "all bespeak a level of physical pain suffered," for which the plaintiffs must be compensated. Because " 'there is no obligation for the jury to find that every injury causes pain' "; *Cusano* v. *Lajoie*, supra, 178 Conn. App. 609; the jury could have accepted the evidence as to the plaintiffs' injuries, and the evidence that the procedures administered were reasonable and necessary to treat those injuries, yet declined to accept the evidence presented as to the plaintiffs' pain and suffering. I see there to be "room for a reasonable difference of opinion among fair-minded [jurors]" as to whether compensable pain and suffering are inherent in the sprains sustained by the plaintiffs; *Howard* v. *MacDonald*, 270 Conn. 111, 128, 851 A.2d 1142 (2004); and, thus, I respectfully disagree with the trial court's conclusion that the jury's verdict was illogical and inconsistent. Although we do not disturb the trial court's action in the absence of an abuse of its discretion, that discretion to set aside a verdict is limited to the situation

Maldonado *v.* Flannery

in which there is no room for a reasonable difference of opinion; thus, when there is room for a reasonable difference in opinion, the trial court abuses its discretion in setting aside a jury's verdict. See id. ("[t]he right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded [jurors] passed [on] by the jury and not by the court"); see also *Seals* v. *Hickey*, 186 Conn. 337, 349, 441 A.2d 604 (1982) ("[t]he defendant has a constitutional right [to] trial by jury under article first, § 19, of the Connecticut constitution, adopted in 1965, which declares '[t]he right of trial by jury shall remain inviolate' " (footnote omitted)); see, e.g., *Munn* v. *Hotchkiss School*, supra, 326 Conn. 575 ("Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded." (Internal quotation marks omitted.)); *Howard* v. *Mac-Donald*, supra, 128 ("[because], *in setting aside the verdict, the trial court has deprived the party in whose favor the verdict was rendered of his constitutional right to have factual issues resolved by the jury*, we must examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion" (emphasis added; internal quotation marks omitted)).

A point of comparison discussed by the majority opinion is instructive here. In *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 332, 789 A.2d 459 (2002), this court determined that "[i]t is not reasonable for the jury to have found the defendant liable for the expense of the spinal fusion surgery, but not liable for

Maldonado *v.* Flannery

the pain and permanent disability necessarily attendant to such intrusive surgery.'' Thus, it was unreasonable not to infer from the spinal fusion surgery at issue in *Schroeder* that the plaintiff in that case experienced pain and suffering. The majority opinion frames *Schroeder* as an extreme that does not provide a formula for determining what other cases warrant the same conclusion. See part III of the majority opinion. I disagree. In my view, an injury requiring spinal fusion surgery is not an extreme case but, instead, is an illustrative example of severe injuries requiring intensive treatments for which it is simply unreasonable for a jury not to assume that compensable pain was attendant. Although I certainly do not suggest that injuries that are treated with chiropractic care, the application of hot and cold packs, electrical muscle stimulation, and a single epidural steroid injection, may never be serious enough to cause compensable pain and suffering, they nevertheless are a far cry from those injuries for which the existence of compensable pain and suffering *must* be presumed.[1] If

---

[1] The trial court's articulation also presumes that all pain associated with a compensable injury is compensable pain, that all pain, as a matter of law, can be equated to damages for which plaintiffs must be compensated. The only authority cited in the majority opinion that could support this contention is a pattern jury instruction that provides in relevant part: '' 'A plaintiff who is injured by the negligence of another is entitled to be compensated for *all physical pain and suffering*, mental and emotional suffering, loss of the ability to enjoy life's pleasures, and permanent impairment or loss of function that (he/she) proves by a fair preponderance of the evidence to have been proximately caused by the defendant's negligence. . . . .' '' (Emphasis added.) Footnote 14 of the majority opinion, quoting Connecticut Civil Jury Instructions 3.4-1, available at https://jud.ct.gov/JI/Civil/Civil.pdf (last visited April 26, 2022). I do not view this model jury instruction as a conclusive statement of Connecticut law on this point. Although there is an absence of guidance as to what renders pain and suffering compensable as a matter of law, there is no authority in our jurisprudence for the proposition that a jury is required to find that *any* instance of pain and suffering, no matter how brief or innocuous, is a damage suffered for which the plaintiff must be compensated. Indeed, case law from our Appellate Court stands for the contrary. See *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 684–85, 188 A.3d 159 (2018) (''[T]he fact that the jury awarded economic damages for medical treatment, *including treatment for pain*, does not necessarily

Maldonado *v.* Flannery

the existence of compensable pain and suffering must
be presumed, as a matter of law, from the treatments
in this case, I do not see many injuries or treatments
remaining for which compensable pain and suffering
would not have to be presumed as a matter of law.

The majority's determination that the trial court was
reasonable in concluding that the inherent purpose of
the medical procedures credited by the jury was to treat
pain and, thus, that compensable pain and suffering
must be assumed, is a marked retreat from *Wichers*
and its statement of our law that "the conclusion of a
jury, if one at which honest [jurors] acting fairly and
intelligently might arrive reasonably, must stand, even
though the opinion of the trial court and this court
be that a different result should have been reached."
(Internal quotation marks omitted.) *Wichers* v. *Hatch*,
supra, 252 Conn. 189. We could be entirely convinced, as
the trial court was, that pain and suffering were inherent
in the plaintiffs' injuries, and we would still be required
to hold that it was improper to set aside the jury's
verdict because the court's duty is not to "merely substi-
tute its own judgment for that of the jury . . . ." *Saleh*
v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 284. The
trial court's duty to set aside a jury verdict is prompted
by a "verdict [that] so shocks the sense of justice as to
compel the conclusion that the jury [was] influenced

mean that it must award damages for pain itself. . . . [I]t may be reasonable
for a jury to conclude that although a plaintiff suffered an injury caused by
a defendant and incurred reasonable and necessary medical expenses in
treating that injury, that plaintiff nevertheless did not suffer compensable
pain and suffering." (Emphasis altered.)); *Cusano* v. *Lajoie*, supra, 178 Conn.
App. 611 ("the court seems to assume that because the plaintiff sought
*medical treatment for pain* in his upper back and neck, and was awarded the
full amount of the cost of that treatment, the plaintiff inevitably experienced
*compensable pain and suffering*" (emphasis added)); see also *Boggavarapu*
v. *Ponist*, 518 Pa. 162, 167, 542 A.2d 516 (1988) ("*A jury is not compelled
to believe that a dog bite or puncture by a needle causes compensable pain.
They may believe that it is a transient rub of life and living, a momentary
stab of fear and pain, or neither.*" (Emphasis added.)).

by partiality, prejudice, mistake or corruption . . . a very clear and striking case of indubitable wrong, so clear and striking as to indicate the influence of undue sympathy, prejudice or corruption on the verdict." (Citation omitted; internal quotation marks omitted.) *Munn* v. *Hotchkiss School*, supra, 326 Conn. 576. A jury determining that the injuries and treatments at issue in this case do not "bespeak a level of physical pain suffered" cannot be the striking, indubitable wrong this court contemplated in *Munn*. Accordingly, I would conclude that the trial court abused its discretion in setting aside the jury's verdict.

Based on the trial court's obligation to view the evidence in the light most favorable to sustaining the jury's verdict, and my hesitation to conclude that compensable pain and suffering must be assumed as a matter of law from the plaintiffs' sprains and the procedures used to treat those injuries, I disagree with the majority's conclusion that "the factual record in the present case contains no reasonable basis in the evidence for the jury's [split] verdict . . . ." (Citation omitted; internal quotation marks omitted.) Part IV B of the majority opinion. Instead, I agree with the Appellate Court's conclusion that the trial court abused its discretion in granting the plaintiffs' joint motion for additurs.

Because I would affirm the judgment of the Appellate Court, I respectfully dissent.